IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOAN ERICKSON; WALT CORAM; and CREED CORAM,<br><br>    Plaintiffs,<br><br>vs.<br><br>PATRICIA A. PFIESTER, individually and d/b/a ACP and d/b/a ACP, LLC; ALASKAN COFFEE POT, LLC; JOE MARKEY; JPI, LLC; JAKE MARKEY; BRUCE TENNEY; and LARRY CHEDEREWICZ,<br><br>    Defendants. | Case No. 1:21-cv-00009-JMK<br><br>**ORDER DENYING MOTION TO DISMISS** |

Pending before the Court at Docket 52 is Defendant Patricia A. Pfiester's Motion to Dismiss ("Motion"). Plaintiffs responded in opposition at Docket 58. At Docket 61, Defendants Alaskan Coffee Pot, LLC, Joe Markey, JPI LLC., and Jake Markey joined Pfiester's Motion. Lastly, Pfiester replied to Plaintiffs' response at Docket 62. As discussed below Defendant's Motion to Dismiss is **DENIED**.

## I. BACKGROUND

Plaintiffs allege, in their First Amended Complaint ("Complaint"), that two brothers, Jake and Joe Markey, relocated to Port Alexander, Alaska, where Plaintiff Walt

Coram hired Jake Markey on an hourly basis for handyman projects.[1] Plaintiffs further allege Jake Markey planned to start a "marijuana grow operation in Port Alexander," for which he sought investors.[2] Jake Markey was ineligible for a license to grow marijuana under Alaska law and enlisted the help of Pfiester to obtain a grow license that eventually would be transferred to one of the Markey brothers.[3] Plaintiffs allege Alaska Coffee Pot ("ACP"), which is owned and operated by Pfiester,[4] was controlled and used by Jake Markey for the purposes of the operation.[5] JPI, LLC, played a part in financing and running the operation.[6]

According to the Complaint, the Markey brothers owned land and a warehouse which they planned to use as the site for the Grow Facility.[7] After raising approximately $140,000 from local investors, Jake Markey asked his part-time employer, Walt Coram, to invest.[8] Plaintiff Joan Erickson, Walt Coram's spouse, agreed to advance $125,445.28 to ACP to enable the purchase of a shipping vessel ("TERRY LYNN") for hauling building materials to Port Alexander.[9] The Markey brothers agreed to be "jointly and severally" liable for repaying the money advanced by Erickson to purchase the TERRY

---

[1] Docket 37 at 3.
[2] *Id.* at 4.
[3] *Id.* at 5.
[4] *Id.* at 2.
[5] *Id.* at 5–6.
[6] *Id.* at 6.
[7] *Id.* at 5.
[8] *Id.* at 6.
[9] *Id.*

LYNN.[10] Later that same year, Erickson advanced an additional $124,555.72 to ACP for building materials related to the Grow Facility.[11]

Erickson advanced $41,488.04 for fuel purchases, "boat runs," and other expenses to make the Grow Facility operational.[12] The Complaint lists roughly a dozen more instances in which Erickson advanced between $400.83 and $9,000 for materials, equipment, employee wages, and operating costs.[13] Defendants sold the TERRY LYNN and retained the sale proceeds in violation of their contract with Erickson.[14]

Messrs. Coram also contributed to the Grow Facility.[15] Walt Coram advanced $30,840.04; Creed Coram advanced $10,602.51 for Grow Facility expenditures, and supplied 3,050 hours in labor for which he was promised compensation, but was never paid.[16]

In their Response, Plaintiffs indicate "they filed suit trying to get their money back."[17] Plaintiffs' Complaint seeks to pierce the corporate veil in pursuit of (1) compensation for the funds advanced by Plaintiffs to Defendants, plus interest; (2) compensation for 3,050 hours of labor by Creed Coram for the benefit of Defendants; and (3) payment of a $20,000 loan signed by Joe Markey, issued by JPI, LLC, to Creed Coram.[18]

---

[10] *Id.*
[11] *Id.*
[12] *Id.* at 8.
[13] *Id.* at 7–8.
[14] *Id.* at 10.
[15] *Id.* at 8–9.
[16] *Id.* at 9.
[17] Docket 58 at 8.
[18] Docket 37 at 11–17.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint because it fails to state a claim upon which relief can be granted.[19] This means that the facts alleged by the complaint do not amount to a claim under any cognizable legal theory.[20] To survive a motion to dismiss, the complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[21] The Court assumes that the facts alleged in the complaint are true and construes them in the light most favorable to the nonmoving party.[22] However, conclusory statements, unwarranted inferences, and naked assertions of law will not suffice; "they must be supported by factual allegations" to survive a motion to dismiss.[23] Dismissal for failure to state a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[24]

## III. DISCUSSION

Defendants argue to dismiss Plaintiffs' claims based on the subject matter of the underlying failed business.[25] Defendants also argue for dismissal of claims against

---

[19] Fed. R. Civ. P. 12(b)(6).
[20] *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)) ("We will uphold a district court's decision to dismiss 'where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim.'").
[21] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[22] *Id.* (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).
[23] *Ashcroft*, 556 U.S. at 679.
[24] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001).
[25] Docket 52 at 9–11.

Pfiester and ACP, LLC, for failure to allege sufficient facts against those particular Defendants.[26] The Court addresses those arguments in turn.

A.  **Defendant's Illegality Defense**

Defendants seek to dismiss the case at bar because Plaintiffs' claims relate to marijuana cultivation,[27] which is illegal under the federal Controlled Substances Act ("CSA").[28] Plaintiffs argue that the nature of the relief they request is permissible despite the illegal nature of the failed business into which Plaintiffs invested.[29] The sole "remedy plaintiff's demand is for compensation for the damages they sustained as a result of defendant's [sic] misconduct. They are not requesting the court order any defendant participate in any illegal activity. Instead, they filed the suit trying to get their money back."[30]

In *Bassidji v. Goe*, the Ninth Circuit explains that when a court sits in diversity and addresses an illegality defense based on federal law, there is a preliminary question as to "whether [Alaska] or federal law should apply to the enforceability question."[31] *Goe* notes that courts have "reached divergent conclusions concerning which law should be applied to determine enforceability in these circumstances."[32] The *Goe* court

---

[26] Docket 59 at 7.
[27] Docket 52 at 9–11.
[28] 21 U.S.C. § 801, *et seq.*
[29] Docket 58 at 7–9.
[30] *Id.*
[31] *Bassidji v. Goe*, 413 F.3d 928, 935 (9th Cir. 2005).
[32] *Id.* at 936.

*Erickson, et al. v. Pfiester, et al.*  Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss  Page 5
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 5 of 18

declined to determine whether to apply federal or state law because, in that instance, the result was the same regardless of which standard applied.[33]

Without clarity as to which standard to apply, this Court will analyze Defendants' illegality defense under both federal law and state law. As outlined below, whether the Court analyzes Defendants' illegality defense under federal or state law, the result is the same: Defendants' illegality defense does not relieve them of their obligations.

**(1) Illegality defense under federal law**

The bedrock principle when analyzing an illegality defense under federal law is that a federal court cannot order an action that would violate the law.[34] In *Kaiser Steel Corp. v. Mullins*, the defendant, Kaiser, was obligated under contract to contribute to retirement benefits of union employees for coal purchased from companies employing nonunion employees.[35] Kaiser claimed that the agreement was unenforceable because it violated the Sherman Act.[36] The Supreme Court agreed, explaining that courts can be guided by general policies, such as avoiding windfalls, so long as the court does not require a party engage in unlawful conduct.[37]

Courts are allowed to take "[n]uanced approaches to the illegal contract defense, taking into account such considerations as the avoidance of windfalls or

---

[33] *Id.*
[34] *Bassidji*, 413 F.3d at 936–38.
[35] *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 74–76 (1982).
[36] *Id.* at 76.
[37] *Id.* at 79–80 (quoting *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959)) ("'[P]ast the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy . . . of preventing people from getting other people's property for nothing when they purport to be buying it.'").

*Erickson, et al. v. Pfiester, et al.*　　　　　　　　　　　　　　　　　　Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss　　　　　　　　　　　　　　　　　　　　　　Page 6
Case 1:21-cv-00009-JMK　　Document 64　　Filed 09/27/23　　Page 6 of 18

forfeitures, deterrence of illegal conduct, and relative moral culpability," so long as "the relief ordered does not mandate illegal conduct."[38] Courts have flexibility to enforce contractual obligations, so long as the court does not actively compel illegal action.[39]

Plaintiffs request the return of the funds they invested[40] and compensation for labor Creed Coram provided to Defendants.[41]

The District of Colorado recently ruled on an illegality defense in a lawsuit brought by investors claiming their investment into a marijuana business had been mishandled.[42] In *Sensoria*, plaintiffs invested in Clover Top Holdings Inc., which was created to "oversee the growing, processing, and selling of marijuana."[43] The *Sensoria* plaintiffs claimed that defendants had stolen their investment money and deprived them of profits they stood to gain from their investment in the marijuana based business.[44] The *Sensoria* court explained that the relief it could provide would not endorse violations of the CSA.[45] The court noted that if the plaintiffs' allegations were true, then permitting defendants to keep stolen money would create an unjust windfall.[46] Further, in considering the plaintiffs' request for recission, the *Sensoria* court explained:

> Merely returning the principal money invested a business does not raise the same concerns as awarding profits from its

---

[38] *Bassidji*, 413 F.3d at 937–38.
[39] *Kelly*, 358 U.S. at 521 (enforcing contractual obligation for buyer to purchase goods despite other unlawful agreements between buyer and seller to price fix in violation of the Sherman Act).
[40] Docket 59 at 7–8.
[41] Docket 37 at 14–15.
[42] *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022).
[43] *Id.* at 1258.
[44] *Id.* at 1259.
[45] *Id.* at 1260.
[46] *Id.* at 1259.

*Erickson, et al. v. Pfiester, et al.*  Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss  Page 7
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 7 of 18

> operation. The investor receives no benefit from the marijuana activity. Moreover, by divesting ownership interests and removing the investor from the marijuana business, it furthers the CSA's goals.[47]

Ultimately, the *Sensoria* court held the illegality defense did not bar the plaintiffs from seeking return of their investment and denied the defendants' motion to dismiss.[48]

Here, Plaintiffs' primary claim is simple: they invested into Defendants' operations and now seek return of their investment.[49] Like the court in *Sensoria*, this Court finds that returning Plaintiffs' investment does not cause either party to violate the CSA. Returning Plaintiffs' investment would not force Defendants to cultivate, distribute, or possess marijuana,[50] and Plaintiffs will not receive income from an illegal marijuana operation.[51] Despite the nature of the underlying business, returning Plaintiffs' investment is a permissible remedy.

Having determined that returning Plaintiffs' investment is a permissible remedy, the Court will examine the equitable considerations at play, including "avoidance of windfalls or forfeitures, deterrence of illegal conduct, and relative moral culpability,"[52] Taking Plaintiffs' allegations as true, it would be patently unfair for Defendants to retain

---

[47] *Id.* at 1262.
[48] *Id.* at 1266 ("[T]he primary form of relief that Plaintiffs seek is the return of their investment principal. Because the illegality defense does not bar this relief type, Plaintiffs may proceed with their security violation claims. The Court does not dismiss these counts.").
[49] Docket 58 at 7–8 ("The only remedy plaintiff's demand is for compensation for the damages they sustained as a result of defendant's [sic] misconduct. They are not requesting the court order any defendant participate in any illegal activity. Instead, they filed the suit trying to get their money back.").
[50] 21 U.S.C. § 841(a).
[51] 21 U.S.C. § 854(a).
[52] *Bassidji*, 413 F.3d at 937–38.

*Erickson, et al. v. Pfiester, et al.*     Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss     Page 8
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 8 of 18

what amounts to an unjust windfall.[53] Regarding the moral culpability of the parties, Defendants' actions are much worse than those of Plaintiffs. Both parties knew or should have known marijuana cultivation is illegal, and attempted to develop a business despite this knowledge. While Plaintiffs knew marijuana is illegal under federal law, they did nothing to undermine Defendants' position. On the other hand, Defendants breached their contract and unlawfully retained the proceeds. Furthermore, if Plaintiffs' claims were dismissed at this stage, Defendants would be incentivized to start more illegitimate business, seek investment, and use the illegality defense to avoid any obligations related thereto. These equitable considerations weigh heavily in favor of taking a "nuanced approach," and permitting Plaintiffs' claims to proceed.[54] Therefore, Plaintiffs' request to have their investment returned is not precluded by Defendants' illegality defense.

The Tenth Circuit examined a similar situation in *Kenney v. Helix TCS, Inc.*, where employees of a marijuana related business brought suit regarding overtime compensation and their employer raised an illegality defense.[55] The *Kenney* court held that an employer is not excused from complying with their legal obligations because they have violated federal law.[56] As one court noted, an employer's "argument to the contrary rests

---

[53] Docket 37 at 6–12 (Plaintiffs allege various mishandlings of the funds they invested. Among the more egregious is the allegation that Plaintiffs funded the purchase of a vessel, the TERRY LYNN, which was to be used in furtherance of the business operations. As part of the contractual obligations related to that purchase the TERRY LYNN was to act as collateral for the loan between Defendants and Plaintiffs. Defendants sold the TERRY LYNN without informing the buyer of Plaintiffs' interest in the TERRY LYNN, and without consent from Plaintiffs. Defendants retained the proceeds from selling the TERRY LYNN and have refused to repay the loan).
[54] *Bassidji*, 413 F.3d at 937–38.
[55] *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106 (10th Cir. 2019).
[56] *Id.* at 1110.

*Erickson, et al. v. Pfiester, et al.*      Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss      Page 9
Case 1:21-cv-00009-JMK    Document 64    Filed 09/27/23    Page 9 of 18

on a legal theory as flawed today as it was in 1931 when jurors convicted Al Capone of failing to pay taxes on illicit income."[57] The *Kenney* court reasoned that dismissing employment related claims under the Fair Labor Standards Act because the underlying business was illegal under the CSA would encourage further violations of the CSA because employers would flock to business areas where there are less regulatory requirements.[58]

Similarly, Plaintiffs' requested compensation for labor is not precluded by the illegality defense. Plaintiffs allege Creed Coram supplied 3,050 hours of labor, including construction, licensing paperwork, fuel supply, logo design, general maintenance, etc., but never was compensated.[59] If Plaintiffs can prove that Creed Coram is entitled to compensation for his labor, then Defendants are not excused from paying their employee based on the subject matter of that business.[60] Therefore, Plaintiffs' requested compensation for labor performed in the employ of Defendants is not precluded by Defendants' illegality defense.

---

[57] *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 933 (8th Cir. 2013).
[58] *Kenney*, 939 F.3d at 1111 ("Indeed, applying FLSA protections to workers such as Mr. Kenney will not grant these individuals any surplus benefit that they cannot easily obtain elsewhere, but the reverse would excuse Helix from FLSA costs and obligations and thereby allow it to reap additional benefit from its CSA violations. Denying FLSA protection to workers in the marijuana industry would consequently encourage employers to engage in illegal markets where they are subject to fewer requirements.").
[59] Docket 37 at 14–15.
[60] *Greenwood v. Green Leaf Lab LLC*, No. 3:17-CV-00415-PK, 2017 WL 3391671, at *4 (D. Or. July 13, 2017), *report and recommendation adopted*, No. 3:17-CV-00415-PK, 2017 WL 3391647 (D. Or. Aug. 7, 2017) (determining that an employer who violates the CSA is not exempt from requirements under the Fair Labor Standards Act).

*Erickson, et al. v. Pfiester, et al.* Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss Page 10
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 10 of 18

### (2) Illegality defense under Alaska law

"Generally, courts leave parties to an illegal bargain where they find them and will grant no remedy to either party."[61] However, "when the public policy is ambiguous," the court will weigh the, "parties' justified expectations, any forfeiture that would result if the term were not enforced, and . . . any special public interest in enforcing the term," against the strength of the public policy against enforcing the agreement as evidenced by legislative or judicial decisions, the likelihood that refusing to enforce the term will further that policy, the seriousness of any misconduct, and the nexus between the misconduct and the agreement.[62]

The public policy Defendants rely on, the CSA, is ambiguous as it applies to the facts of this case. The CSA prohibits using, distributing, possessing, or cultivating any marijuana, including marijuana for medicinal use.[63] Alaska law legalizes marijuana for medicinal as well as recreational use.[64] In 2013, the U.S. Department of Justice issued a memorandum indicating several priorities and explaining that where states have legalized marijuana and provide sufficient regulatory oversight concerning "cultivation, distribution, sale and possession of marijuana . . .[,] enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing

---

[61] *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993) (citing *Cosmopolitan Fin. Corp. v. Runnels*, 625 P.2d 390, 397 (1981)).
[62] *Pavone*, 860 P.2d at 1231.
[63] 21 U.S.C. §§ 841(a), 844(a).
[64] Alaska Stat. § 17.38.010, *et seq.*

*Erickson, et al. v. Pfiester, et al.*  Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss  Page 11
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 11 of 18

marijuana related activity."[65] One year later, 2014, Congress passed an appropriations law prohibiting federal funds from being used to prevent states like Alaska from regulating the "use, distribution, possession, or cultivation of medicinal marijuana."[66] In 2018 the U.S. Department of Justice rescinded its previous memorandum.[67] Recently, the President of the United States granted a "full, complete, and unconditional pardon," for all individuals who committed the offense of "simple possession of marijuana."[68] Several courts have noted the CSA's policy concerning marijuana is ambiguous.[69] Based on the conflicting

---

[65] U.S. DEPARTMENT OF JUSTICE, MEMORANDUM FROM THE DEPUTY ATTORNEY GENERAL ON GUIDANCE REGARDING MARIJUANA ENFORCEMENT TO ALL UNITED STATES ATTORNEYS (AUGUST 29, 2013).
[66] United States v. McIntosh, 833 F.3d 1163, 1169 (9th Cir. 2016) (citing Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113–235, § 538, 128 Stat. 2130, 2217 (2014)).
[67] U.S. DEPARTMENT OF JUSTICE, MEMORANDUM FROM THE DEPUTY ATTORNEY GENERAL ON GUIDANCE REGARDING MARIJUANA ENFORCEMENT TO ALL UNITED STATES ATTORNEYS (January 4, 2018).
[68] Press Release, President Joe Biden, A Proclamation on Granting Pardon for the Offense of Simple Possession of Marijuana (October 6, 2022).
[69] Peridot Tree, Inc. v. City of Sacramento, No. 2:22-CV-00289-KJM-DB, 2022 WL 10629241, at *6 (E.D. Cal. Oct. 18, 2022) ("The United States' ambiguous marijuana enforcement policies stand in stark contrast with California's deliberate and extensive regulatory effort. As then-judge Gorsuch wrote several years ago, the federal government has been sending 'mixed messages' for some time."); Mann v. Gullickson, No. 15-CV-03630-MEJ, 2016 WL 6473215, at *4 (N.D. Cal. Nov. 2, 2016) ("Nevertheless, federal policy regarding enforcement of the CSA has been less than clear since 2009."); Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co., 163 F. Supp. 3d 821, 832–33 (D. Colo. 2016) ("But, as the parties are well-aware, the nominal federal prohibition against possession of marijuana conceals a far more nuanced (and perhaps even erratic) expression of federal Policy . . . that as early as 2009 . . . federal authorities had made public statements that reflected an ambivalence towards enforcement of the Controlled Substances Act in circumstances where a person or entity's possession and distribution of marijuana was consistent with well-regulated state law."); In re Malul, 614 B.R. 699, 706 (Bankr. D. Colo. 2020) ("[T]here remains an ever-shifting landscape of federal enforcement of marijuana criminalization where the same activity is fully legal under state law."); KUSH, Inc. v. Van Vranken, No. 220CV649JCMDJA, 2020 WL 8371452, at *4 (D. Nev. June 19, 2020) (citing Conant v. Walters, 309 F.3d 629, 644–45 (9th Cir. 2002)) ("As states legalized medical marijuana, federal

federal actions taken by Congress, the President, and the Department of Justice, this Court believes an Alaska Court would find sufficient ambiguity in the relevant public policy to require analysis under the factors outlined by the Alaska Supreme Court in *Pavone v. Pavone*.[70] Therefore, this Court will weigh the *Pavone* factors to determine whether Defendants' alleged obligations are unenforceable under Alaska law.

Factors weighing in favor of enforcing an obligation are the "parties' justified expectations, any forfeiture that would result if the term were not enforced, and . . . any special public interest in enforcing the term."[71] Plaintiff Joan loaned Defendant ACP $125,445.28 to purchase the TERRY LYNN.[72] Defendants agreed to repay that amount, but instead sold the TERRY LYNN and never paid off the loan.[73] Plaintiffs had a reasonable and justified expectation that Defendants would repay the loan advanced for the purchase of the TERRY LYNN. Plaintiffs also provided labor and were promised a "fair and reasonable amount of compensation," but have never been paid for the labor provided.[74] "Fair and reasonable compensation," for labor provided is inherently a justified expectation in the employment context.[75] Plaintiffs invested thousands of dollars into building and operating

---

policy regarding the enforcement of the CSA has been unclear. Further, the federal government's concern over the CSA's medical marijuana prohibition has waned in recent years, and the underlying policy purporting to support this prohibition has been undermined.").
[70] Pavone, 860 P.2d at 1231.
[71] *Id.*
[72] Docket 37 at 6.
[73] *Id.* at 6–10.
[74] *Id.* at 9.
[75] Alaska Stat. § 23.10.065 (setting minimum wage requirement for employers to pay employees).

*Erickson, et al. v. Pfiester, et al.*  Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss  Page 13
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 13 of 18

a business with the expectation that Defendants would use those funds appropriately.[76] Plaintiffs would forfeit hundreds of thousands of dollars if Defendants are permitted to escape their obligations. Plaintiffs' reasonable and justified expectations, combined with the significant forfeiture, weigh heavily in favor of enforcing Defendants' obligations.

The factors against enforcing the agreement include the strength of the public policy against enforcing the agreement as evidenced by legislative or judicial decisions, the likelihood that refusing to enforce the term will further that policy, the seriousness of any misconduct, and the nexus between the misconduct and the agreement.[77] As discussed above, the public policy of the CSA concerning marijuana has weakened over time. This is evidenced by Alaska legislation legalizing marijuana,[78] Congressional legislation prohibiting use of DOJ funds that would interfere with state regulation of medicinal marijuana,[79] and court decisions permitting enforcement of contractual and employment obligations despite there being at least some tie to marijuana.[80] Furthermore, it is unclear

---

[76] Docket 37 at 6–10.
[77] *Pavone*, 860 P.2d at 1231.
[78] Alaska Stat. § 17.38.010, *et seq.*
[79] *McIntosh*, 833 F.3d at 1169 (citing Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113–235, § 538, 128 Stat. 2130, 2217 (2014)).
[80] *Kenney*, 939 F.3d at 1112 (explaining that "employers are not excused from complying with federal laws just because their business practices are federally prohibited"); *Sensoria, LLC*, 581 F. Supp. 3d at 1266 (permitting the type of relief sought here, "the primary form of relief that Plaintiffs seek is the return of their investment principal); *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215, at *9 (N.D. Cal. Nov. 2, 2016) (concluding that "the federal government's wavering policy on medical marijuana in states that regulate this substance, and California's expressed policy interest in allowing qualified patients to obtain medical marijuana, the purported illegality here is not one the Court finds to mandate non-enforcement of the parties' contract.); *Bart St. III v. ACC Enterprises, LLC*, No. 217CV00083GMNVCF, 2018 WL 4682318, at *6 (D. Nev. Sept. 27, 2018) (finding that "the potential remedy in this case . . . would not mandate illegal activity. Accordingly, the Court declines to dismiss Plaintiff's claims relating to

*Erickson, et al. v. Pfiester, et al.*  Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss  Page 14
Case 1:21-cv-00009-JMK   Document 64   Filed 09/27/23   Page 14 of 18

whether failing to enforce the agreements in this case would further the policy in the CSA concerning marijuana. Certainly, failing to enforce the agreement would disincentivize Plaintiffs and similarly situated individuals from investing in marijuana related businesses. However, failing to enforce legal obligations because of the illegal nature of the underlying business likely would incentivize more marijuana related actions like those of Defendants.[81] Given the unclear federal policy surrounding marijuana in Alaska, contrasted by clearly favorable state policy on the matter, this Court believes that an Alaska court would view the agreements to engage in a legal Alaska marijuana business as innocuous. The factors weighing against enforcing the agreements are not compelling, especially compared to the significant hardship on Plaintiffs if the agreements were not enforced. Therefore, this Court believes an Alaska court applying *Pavone* would permit Plaintiffs' claims to proceed despite the illegal nature of the failed business.

Concluding that Defendants' illegality defense does not prevent recovery whether applying federal or state law the Court hereby **DENIES** Defendants' Motion regarding their illegality defense.

---

breach of contract on illegality grounds at this stage"); *see also KUSH, Inc. v. Van Vranken*, No. 220CV649JCMDJA, 2020 WL 8371452, at *5 (D. Nev. June 19, 2020).

[81] *Kenney*, 939 F.3d at 1111 (explaining that permitting a company to shirk its legal responsibilities to its employees because the company's business model deals with marijuana would incentivize employers to "engage in illegal markets where they are subject to fewer requirements.").

*Erickson, et al. v. Pfiester, et al.*     Case No. 1:21-cv-00009-JMK
Order Denying Motion to Dismiss     Page 15
Case 1:21-cv-00009-JMK    Document 64    Filed 09/27/23    Page 15 of 18

### B. Claims Against Patricia Pfiester and ACP, LLC

Defendants argue in their Motion that "plaintiffs have no claims directly against defendant Pepper A. Pfiester."[82] Defendants argue that Plaintiffs failed to meet the "great specificity in allegations and claims," required by *Iqbal* and *Twombly*.[83] They also contend that Plaintiffs do not allege any claims against ACP, LLC.[84] Defendants are incorrect. Under *Iqbal* and *Twombly*, Rule 8 "does not require 'detailed factual allegations.'"[85]

Plaintiffs' Complaint makes a variety of factual assertions against both Pfiester and ACP. Plaintiffs first allege Pfiester is registered as the "sole member, owner and registered agent of ACP, LLC,"[86] "Defendants Pepper Pfiester d/b/a ACP . . . entered into a contract with Lender Joan to repay funds she advanced for working capital, the purchase the Terry Lynn, and the purchase of building materials."[87] The TERRY LYNN itself was meant to act as security for at least part of the loan advanced by Plaintiffs to ACP.[88] "ACP and/or the Markey Brothers conspired to sell the vessel to a third party without prior notice to Plaintiffs."[89]

---

[82] Docket 52 at 1.
[83] Docket 59 at 7.
[84] *Id.*
[85] *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[86] Docket 37 at 2.
[87] *Id.* at 11.
[88] *Id.* at 12.
[89] *Id.* at 10.

Plaintiffs provided funding and labor for the direct benefit of ACP, and ACP was doing business on behalf of Pfiester.[90] Pfiester, through ACP, agreed to repay or compensate Plaintiffs, but failed to do so.[91] Pfiester took possession of sale proceeds from the TERRY LYNN and refused to repay the loan.[92]

Plaintiffs allege that Pfiester and ACP were part of a contract regarding the TERRY LYNN, which Pfiester breached, which is a legal conclusion.[93] The Complaint contains factual assertions, such as the ones discussed above, which support this legal conclusion.[94] These factual allegations, taken as true, move the needle from possibility to plausibility concerning Plaintiffs' ability to recover against Pfiester/ACP. Therefore, Defendants' Motion seeking dismissal of the claims against Pfiester and ACP is **DENIED**.

## IV. CONCLUSION

Defendants seek to dismiss Plaintiffs' claims based on the illegal subject matter of the failed business venture and a purported lack of claims alleged against Pfiester and ACP. Neither argument is persuasive here. Because there are remedies available that would avoid compelling illegal conduct, the illegality defense does not prevent relief under a federal law analysis. Because the Court believes an Alaska court would find the public policy regarding marijuana under the CSA ambiguous and would further find the factors provided in *Pavone* weigh in favor of enforcing the agreement, the Court will allow

---

[90] *Id.* at 6–12.
[91] *Id.*
[92] *Id.* at 10.
[93] *Id.* at 11.
[94] *Id.* at 6–11.

Plaintiffs' claims to move forward. Defendants' argument that Plaintiffs have failed to bring any claims against Pfeister and ACP simply are incorrect; Plaintiffs' Complaint contains sufficient factual allegations to pass muster under *Iqbal* and *Twombly*. Therefore, Defendants' Motion is hereby **DENIED**.

IT IS SO ORDERED this 27th day of September, 2023, at Anchorage, Alaska.

                                              */s/ Joshua M. Kindred*
                                              JOSHUA M. KINDRED
                                              United States District Judge